NEBRASKA DRILLERS, Inc.

v.

WESTCHESTER FIRE INS. CO. OF NEW YORK.

Civ. A. No. 3867.

United States District Court
D. Colorado.

Aug. 25, 1954.

O'Neill & O'Neill, Denver, Colo., F. P. O'Neill, and Gerald H. Galligan, Denver, Colo., for plaintiff.

Clarence R. Conklin, of Heineke & Conklin, Chicago, Ill., and Darwin D. Coit, Denver, Colo., for defendant.

CHRISTENSON, District Judge.

In this action plaintiff, Nebraska Drillers, Inc., seeks to recover $17,357.57 and interest for an alleged fire loss under a policy of insurance issued to it by Westchester Fire Insurance Company of New York, defendant herein.

At the close of the trial the Court expressed the opinion that the pleadings and evidence required findings to the effect that a fire occurred on or about March 18, 1951, in which substantial quantities of supplies and equipment belonging to the plaintiff were damaged or destroyed; that at said time the policy of insurance issued by the defendant was in force, and covered the risk of such fire; that notice of loss was duly given by the plaintiff; that no sworn proof of loss was submitted as required by the terms of the policy but that such formal proof of loss was waived by the defendant and that the plaintiff, therefore, is entitled to judgment. Since then, the Court has read and considered briefs of counsel and has referred to the reporter's notes of the evidence. No reason is seen for modifying the foregoing views, and findings will be entered accordingly. Indeed, apart from the amount of the loss, none but the finding on waiver seems seriously to be questioned by the defendant. I add the following observations on the issue of waiver so that the parties will have an indication of the Court's thinking following the submission of briefs.

The entire course of conduct of the insurance company, from the time its representative first called at the scene of the fire long prior to the period specified in the policy for the submission of sworn proof of loss, on through negotiations and efforts of settlement thereafter, to the final conference in Denver, and the

writing of the letter designated herein as Defendant's Exhibit K, following such conference, had the reasonable tendency and effect, if not express design, to lead plaintiff to assume that settlement would be made without the necessity of submitting formal sworn proof of loss. In preliminary investigations, in requests for information prerequisite to the payment of claim, during repeated conferences in which invoices, statements and other material which plaintiff attempted to supply were mentioned, and notwithstanding the travel of plaintiff's representative from place to place in an apparent effort to meet defendant's requirements, not once did defendant suggest or infer that a sworn proof of loss was desired or expected. On the contrary, it and its representatives indicated by conduct and attitude so strongly as to amount almost to an affirmative representation that settlement would be made without formal sworn proof of loss upon plaintiff's supplying invoices or upon the elimination of various items for which invoices were not submitted. Failure to promptly pay the amount of the claim was explained repeatedly on grounds other than any failure to submit sworn proof of loss.

■■■■ A waiver may be shown by parol in express terms or by necessary implication, and acts or a course of conduct evidencing a recognition of liability, or a denial of liability on grounds other than the failure to file proof, may constitute a waiver. Fedas v. Insurance Co., 300 Pa. 555, 151 A. 285. If the insurer induces the insured to believe that no further action on his part is necessary as a prerequisite to payment, or that action other than submission of proofs would be accepted by the company as a basis of payment, formal proofs may be deemed waived. Hartford Fire Insurance Co. v. Kiser, 4 Cir., 64 F.2d 288. See also National Mutual Fire Insurance Co. v. Sprague, 40 Colo. 344, 353, 92 P. 227; Reliance National Life Insurance Co. v. Wolverton, 88 Colo. 353, 296 P. 793. Even negotiations for an adjustment in the absence of notice to the contrary may be sufficient ground for plaintiff's assumption that no further or more formal proofs of loss were necessary. Niagara Fire Insurance Co. of New York, N. Y. v. Raleigh Hardware Co., 4 Cir., 62 F.2d 705. And an adjustor going to the scene of a fire loss and informing himself generally as to the situation, has power to waive a formal proof of loss. Firemen's Insurance Co. v. Brooks, 6 Cir., 32 F.2d 451, 65 A.L.R. 909.

■■ Under the circumstances shown by the record, the Court is of the opinion that the submission of formal proofs of loss was waived by the defendant. Such waiver appears not only from the evidence adduced by the plaintiff but also it is indicated by the evidence presented by the defendant. If there is any question as to the sufficiency of the pleadings to make effective this defense of waiver, particularly in view of the amendment already allowed, the pleadings will be deemed further amended to conform to the proof.

Passing now to the matter which the Court primarily reserved for further consideration—the amount the plaintiff is entitled to recover herein by reason of the fire loss: I was not, and am not, convinced that the loss is as great as claimed by the plaintiff, nor as little as conceded by the defendant; hence, an examination should be made of the standards by which such loss may be determined and of the evidence indicating its extent.

On the measure of payment, the policy provides:

"Unless otherwise provided in form attached, this company shall not be liable beyond the actual cash value of property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality * * *.

"10. The liability of this company for any or all of the hazards covered under this policy shall not exceed the amount stated in this policy. However, this company shall not be liable beyond the actual sound value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to reproduction value, with proper deductions for depreciation however caused, and shall in no event exceed what it would cost the insured to repair or replace the same with material of like kind and quality * *.

"12. In consideration of the rate and/or form under which this policy is written, it is expressly stipulated and made a condition of this contract that the insured shall at all times maintain contributing insurance on the property insured by this policy to the extent of at least 100% of the actual sound value at the time of the loss and that, failing to do so, the insured shall, to the extent of such deficit, bear their portion of any loss."

■ The provision that payment of loss shall in no event exceed what it would cost the insured to repair or replace the same with material of like kind and quality is a limitation of the insurer's liability and not an independent and controlling measure of damages. 29 Am.Jur. 891, Sec. 1186.

■ The basic inquiry is the actual cash value of the property immediately preceding the occurrence of the loss or damage, less the remaining value, if any, following the fire. Patriotic Insurance Co. of America v. Franciscus, 8 Cir., 55 F.2d 844. The cash value ordinarily is determined by what the goods would have brought for cash at the market price at the time and place they were destroyed. Mack & Co. v. Lancashire Insurance Co., C.C., 4 F. 59.

■ What the cash value of property is can be ascertained or estimated from its reproduction value, with proper deduction for depreciation, by the terms of the policy itself, and under the authorities. However, it is often necessary to look to various factors in order to arrive at the ultimate fact. To ascertain a fire loss, not only is the express evidence concerning original cost, replacement value and depreciation to be looked to, but the trier of the facts should call to his aid every other fact and circumstance which logically would tend to the formation of a correct estimate of the loss, including original cost, the cost of replacement, depreciation, the opinions of witnesses, declarations against interest and the uses to which the property might have been put. McAnarney v. Newark Fire Insurance Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149.

If the Court were bound by the express estimates of witnesses as to values or losses, it would be confronted with the necessity of either denying recovery entirely, awarding judgment for the full amount claimed by the plaintiff or awarding judgment for no more than $2,000. As heretofore indicated, none of these dispositions would satisfy the Court that justice was being done.

Plaintiff's witnesses were vague and unsatisfactory concerning what was actually in the "dog houses" immediately preceding the fire, what happened to the destroyed or damaged equipment after the fire, and what salvage value, if any, it would have. There was no satisfactory proof of total loss with respect to various items, and remaining salvage value as to some was affirmatively shown. Proof of replacements is fragmentary. Carson's list was the most satisfactory enumeration of the damaged items from the standpoint of the plaintiff but his testimony did not fully support plaintiff's theory that all of the equipment in the "dog houses" was totally destroyed, or that there was no salvage value to any of the equipment listed. Plaintiff's case, in the last analysis, rests very substantially upon the testimony and the previous reports of the tool pusher, Gilbert. He said he made a list of the damaged items in addition to the Carson list, but

this was never produced at the trial and its absence was not satisfactorily explained. The Court is not entirely satisfied as to the accuracy of his reports or testimony, and the record indicates at least at one time that the plaintiff's officers were not.

On the other hand, the testimony of defendant's witness, Owens, at first so positive concerning Morris' statements inconsistent with plaintiff's case, suffered from cross-examination. It was apparent that Owens was mistaken to some extent when he claimed Morris had made contradictory statements prior to the Denver conference and after the second fire. The so-called "Deiterman" list as identified in the deposition, on which defendant strongly relies to establish a ceiling on plaintiff's loss, is weakened by Deiterman's letter in connection with which the list was originally submitted, and by the facts shown in the deposition that it was made up from other records and memory, more than eight months after his inspection immediately following the fire. The Court cannot accept Deiterman's list as complete in view of various positively established facts indicating the contrary.

■ The Court does not believe that uncertainty in the proof or the fact that the position of either party cannot be accepted in its entirety, works the result that no judgment, one way or the other, can be arrived at, or that the plaintiff, entitled to something, must be turned away empty handed. Difficulty of proof does not destroy the right of recovery, providing that the amount of the award is not based on mere surmise and conjecture. As indicated above, the fact finder can look to various circumstances in evidence to weigh the strength of the respective positions and the degree to which either should be accepted or rejected by the Court.

■ The Court may even look to the admissions against interest inherent in some of the negotiations for settlement shown by the evidence so long as such admissions are not of facts assumed to be true only for the purpose of compromise but are admissions of distinct and independent facts even though made in connection with compromise negotiations. Shipley v. Pittsburgh & L. E. R. Co., D.C., 83 F.Supp. 722, 733; Cooper v. Brown, 3 Cir., 126 F.2d 874; Martin v. Imhsen, 21 How. 394, 62 U.S. 394, 16 L.Ed. 134; McNiel v. Holbrook, 12 Pet. 84, 37 U.S. 84, 9 L.Ed. 1009; Schofield v. Parlin & Orendorff Co., 10 Cir., 61 F. 804, 10 C.C.A. 83.

Without going into further detail but weighing all of the facts and circumstances properly before the Court in the light of the principles mentioned above, the Court is of the opinion that the loss suffered by the plaintiff and covered by the insurance policy was $11,000.

It is further believed that the value of the equipment and supplies which were covered by the insurance policy exceeded $115,000 the amount of the policy. All of the witnesses seemed to agree that if the amount of supplies and equipment carried with the rig was not excessive, it was adequate. Apparently substantial purchases had been made following the acquisition of the rig and the issuance of the policy in question, as a reference to the invoices received in evidence will show. As against the testimony of Owens that Nichols admitted the rig with supplies and equipment was worth approximately $160,000 must be weighed uncertainty as to what period these figures related, the failure of Angell to confirm Owens' testimony on this point and the fact that by Owens' own testimony Nichols indicated a willingness to sell the rig, following the fire, for $115,000. It could hardly be urged with consistency in evaluating the outfit for the purposes of applying the co-insurance clause that plaintiff's valuation of the rig, including supplies and equipment, should be accepted in its entirety while in evaluating the loss actually suffered its valuation of the same supplies and equipment should be completely rejected. It, however, is fair to assume that at the time Nichols indicated the $115,000 valuation, depreciation and damage to some extent had op-

erated following the fire, and that the rig as a whole was not as valuable as it was at the time of the fire. The Court is of the opinion that at the time of the loss, the insured property was of the actual sound value of $130,000, and that pursuant to paragraph 12 of the policy quoted above, the insured must, to the extent of the deficit of $15,000 in the amount of the policy, bear its proportion of the loss, which proportion as the Court computes it is ³⁄₂₆ths, or $1,269.25.

Plaintiff is entitled to judgment against the defendant for the sum of $9,730.75 and costs. Counsel for plaintiff is requested to prepare and submit findings of fact, conclusions of law and judgment consistent with the foregoing opinion.