**George E. and Dorothy E. CONNER**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 68–H–721.**

United States District Court
S. D. Texas,
Houston Division.

Sept. 18, 1969.

Harold Chamberlain and Robert L. Waters, of Chamberlain & Hrdlicka, Houston, Tex., for plaintiffs.

Dan Penner, Asst. U. S. Atty., Dallas, Tex., and George Pain, Asst. U. S. Atty., Houston, Tex., for defendant.

SINGLETON, District Judge.

This is a suit to recover income taxes. The Internal Revenue Service determined that George and Dorothy Conner, plaintiffs in this case, had understated their taxable income for the years 1965 and 1966. Plaintiffs paid the amount in controversy, $22,359.04, timely claimed a refund from the Internal Revenue Service, and timely filed this suit.

The tax deficiency claimed by the government resulted from a sequence of events which began on September 10, 1965, when plaintiffs' home was virtually destroyed by fire. The home, located at 5559 Holly Springs, in the Tanglewood Section of Houston, Texas, had previously been purchased by plaintiffs in 1961 and had been remodeled in the spring of the year of the fire. Plaintiffs were forced to relocate temporarily while their home was being rebuilt. Accordingly, they leased a house a short distance down the street in the same neighborhood. Their payments were $600.00 per month for six months totaling $4,200.00 (PX–11).

Soon after the destruction of their home, plaintiffs made a claim from their insurance carrier. After some negotiation, they accepted a total payment of $88,487.00 from the insurance company. Of this amount, $4,655.82 was earmarked to compensate plaintiffs for their out-of-pocket expenses incurred as a consequence of the fire, $4,200.00 of which was for reimbursement to plaintiffs for the rental payments paid by plaintiffs to rent the house used during the reconstruction of their burned home. The applicable provisions of the insurance policy involved reads as follows (PX–14):

"ADDITIONAL LIVING EXPENSES AND RENTAL VALUE: If loss resulting from any of the perils insured against hereunder renders the insured property wholly or partially untenantable, the company agrees to pay * *

"a. the necessary and reasonable increase in living expense to continue as

nearly as practicable the normal standard of living of the insured's household caused by such untenantability."

The issue to be resolved here is whether or not plaintiffs improperly excluded from their gross income, as that phrase appears in section 61(a) of the Internal Revenue Code of 1954, $4,200.00 received from the insurance company as reimbursement for the rental payments paid by plaintiffs plus $465.82 for reimbursement for other out-of-pocket living expenses resulting from the fire.[1] The parties agree that this is an issue which is solely one of law to be decided by the Court.

Section 61(a), Internal Revenue Code of 1954, defines gross income in the following terms:

"Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Alimony and separate maintenance payments; (9) Annuities; (10) Income from life insurance and endowment contracts; (11) Pensions; (12) Income from discharge of indebtedness; (13) Distributive share of partnership gross income; (14) Income in respect of a decedent; and (15) Income from an interest in an estate or trust."

The government contends that the broad language of section 61(a) manifests an intent by Congress to exercise the full extent of its taxing power. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Since plaintiffs in this case, says the government, have failed to demonstrate that the receipts in question here are excludable from their gross income, the receipts must be included in it. Millsap v. Commissioner of Internal Revenue, 387 F.2d 420 (8th Cir. 1968), affirming 46 T.C. 751 (1967); Arnold v. United States, 289 F.Supp. 206 (E.D.N.Y.1968); Eschauzier v. United States, 69–1 U.S.T.C., para. 9273 (D.Conn.1969). Administratively, the Internal Revenue Service ruled ten years ago that insurance proceeds to reimburse a taxpayer for his out-of-pocket living expenses occasioned by a fire casualty to the taxpayer's home must be included in his gross income. Rev.Rul. 59–360, 1959–2 Cum.Bull. 75.

In Eschauzier v. United States, *supra,* the taxpayer made no contention that the excess living expenses incurred as a result of the destruction of his home by fire were not includable in his gross income. He instead conceded that point and based his entire case on the proposition that he was entitled to a deduction. *Eschauzier, supra,* therefore has no bearing on whether Conner's living expense receipts are includable.

In Arnold v. United States, *supra,* the taxpayer's home burned, she and her children were forced to live in a hotel for two months, and she was accordingly reimbursed by her insurance company. The court held that the receipts were income within section 61(a). In reaching that result, the court relied on Millsap v. Commissioner, *supra,* which had been decided by the Eighth Circuit only a few months earlier. In *Millsap, supra,* it was held that a payment by the taxpayer's insurance company to compensate him for additional living expenses caused by the destruction of his home by fire was properly includable. Said the court, "Taxpayer has pointed to no statutory provision excluding this type of receipt from gross income, and we have found no such provision. The $2500 received for additional living expenses falls within the broad sweep of income under § 61." 387 F.2d 423.

1. This is not the only issue in the case. Plaintiffs claimed a casualty loss, the amount of which was in dispute. That question was one of fact and was resolved by the jury which heard this case.

How really broad is section 61(a)? Does it include within its scope the type of receipt paid to plaintiffs in this instance? The answers to these questions can be determined only by a careful investigation of the concept of income for tax purposes and the various *stages* through which it has evolved.

Income has been the subject of federal taxation since as long ago as the Civil War and continuously since 1913. Rapp, Some Recent Developments in the Concept of Taxable Income, 11 Tax.L.Rev. 329 (1956). In that year, the sixteenth amendment to the United States Constitution was proclaimed as having been ratified. It provided then, as now, that:

> "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Plainly, the amendment was not a grant of power to Congress to tax incomes, for such a power is one which Congress always had. It was adopted to meet the decision of the United States Supreme Court in Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895) which declared the Income Tax Act of 1894 unconstitutional on the ground that it was an unapportioned direct tax. See Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 173–174, 46 S.Ct. 449, 70 L.Ed. 886 (1926).

No attempt has ever been made by Congress to define with specificity the term "income" as it is used in the sixteenth amendment. In earlier taxing acts, it instead provided that "gross income" *includes* "gains, profits, and income" from various designated sources "or from any source whatsoever," leaving to administrative and judicial determination the inclusion or exclusion of certain items. See Rapp, *supra*.

The judiciary accepted this responsibility and in Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1919), the Supreme Court, referring to two cases [2] arising under the Corporation Tax Act of 1909, endorsed the following definition of income:

> " 'Income may be defined *as the gain* derived from capital, from labor, or from both combined,' provided it be understood to include profit gained *through a sale or conversion of capital assets.*" (Emphasis Added.)

With the growth of tax jurisprudence and the increasing store of experience with income tax problems, this "all-inclusive" formulation to test the presence of income was found to be impractical. The Supreme Court gradually abandoned its earlier pronouncements as universal criteria, instead approaching particular situations on an ad hoc basis, and throughout *italics* the "all-inclusive" scope of the income which Congress is permitted constitutionally to tax.[3]

Final abandonment of the "all-inclusive" approach to this definition of income came with the case of Commissioner v. Glenshaw Glass Co., *supra*. There, it was held that exemplary damages recovered for fraud or as the punitive two-thirds portion of a treble damage antitrust recovery must be reported by a taxpayer as gross income under section 22(a) of the Internal Revenue Code of 1939. That provision is as follows:

> " 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind

2. Stratton's Independence v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285 (1913) ; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054 (1918).

3. See Mertens, Law of Federal Income Taxation, Code Commentary, Ch. 1., Subch. B–page 13. An indication of what was to come can be found as early as United States v. Kirby Lumber Co., 284 U.S. 1, 3, 52 S.Ct. 4, 76 L.Ed. 131 (1931) where Justice Holmes, said, in holding income to be realized by a corporation by retirement of its own bonds for less than the issue price: "We see nothing to be gained by the discussion of judicial definitions."

and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for *gain* or profit, or *gains* or profits from any source whatever." (Emphasis Added.)

The Court said that the *Eisner* definition of "income" was useful in the context of the decision there, i. e., distinguishing gain from capital, but that:

" * * * it was not meant to provide a touchstone to all future gross income questions * * *

"*Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. * * ** "

■ The language of section 61(a) of the Internal Revenue Code of 1954, set forth above, might at first glance appear to have broadened the definition of gross income by the omission of any reference to gain.[4] This, however, is not so, because the Supreme Court had before it the then recently enacted 1954 Code of Internal Revenue when it decided Commissioner v. Glenshaw Glass Co., *supra.* It noted that, although the definition of gross income had been simplified, "no effect on its present broad scope was intended." 348 U.S. 432, 75 S.Ct. 477.[5] In addition, the Court in General American Investors Co. v. Commissioner of Internal Revenue, 348 U.S. 434, 75 S.Ct. 478, 99 L.Ed. 504 (1955), decided the same day as *Glenshaw Glass Company, supra,*

held that "insider profits" under the Securities and Exchange Act of 1934 were includable in the recipient corporation's gross income.

"*In accordance with the legislative design to reach all gain* constitutionally taxable unless specifically excluded, we conclude that the petitioner is liable for the tax * * *." 348 U.S. 436, 75 S.Ct. 479 (Emphasis Added.)

The opinion in *Glenshaw Glass Company, supra,* regardless of what it said about Eisner v. McComber, *supra,* did not repudiate the concept that there must be gain before there is income within the meaning of the sixteenth amendment. 1 Mertens, section 5.02, p. 4. This is verified by the fact that in Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), a year after the decisions in *Glenshaw Glass Company, supra,* and General American Investors v. Commissioner, *supra,* it was said:

"We have repeatedly held that in defining 'gross income' as broadly as it did in § 22(a) Congress intended to 'tax *all gains* except those specifically exempted.'" 351 U.S. 246, 76 S.Ct. 803 (Emphasis Added.)

To the same effect, see Commissioner of Internal Revenue v. Minzer, 279 F.2d 338 (5th Cir. 1960).

Accountants and economists may differ greatly as to what is or is not income. It is not, however, their theories that have guided the courts throughout the years. Instead, the courts have chosen to use the meaning given the term "income" by its everyday use in common speech. Helvering v. Edison Bros.

---

4. I.R.C. (1939), section 22(a), is an example of what the drafting experts in the Office of the Legislative Council refer to as the "can of worms" school of drafting, whereas I.R.C. (1954), section 61(a) is an example of the "laundry list" school. See Mertens, Code Commentary, *supra,* p. 19.

5. In reference to section 61(a), the Senate Finance Committee Report says: "While the language in existing section 22(a) has been simplified, the all-inclusive nature of

statutory gross income has not been affected thereby. Section 61(a) is as broad in scope as section 22(a)." The report continues saying that the new definition of gross income "is based upon the sixteenth amendment and the word 'income' is used as in section 22(a) in its constitutional sense." Senate Report No. 1622, 83rd Cong. 2nd Sess. 168 (1954), U.S. Code Cong. & Admin.News 1954, p. 4802. A virtually identical statement appears in House of Representatives' Report No. 1337, 83rd Cong., 2nd Sess. A18.

Stores, 133 F.2d 575 (8th Cir. 1943); 1 Mertens, supra, n. 5, p. 2. And the meaning of income in its everyday sense is "a *gain* or recurrent benefit usually measured in money that derives from capital or labor; also: the *amount of such gain* recovered by an individual in a given period of time." Webster's Seventh New Collegiate Dictionary, p. 425 (1965—Emphasis Added). Income is nothing more nor less than realized gain. Shuster v. Helvering, 121 F.2d 643 (2nd Cir. 1941). It is not synonymous with receipts. 47 C.J.S. Internal Revenue § 98, p. 226.

■ Whatever may constitute income, therefore, must have the essential feature of gain to the recipient. This was true when the sixteenth amendment became effective, it was true at the time of the decision in Eisner v. McComber, *supra,* it was true under section 22(a) of the Internal Revenue Code of 1939, and it is likewise true under section 61 (a) of the Internal Revenue Code of 1954. If there is no gain, there is no income.

As already pointed out, plaintiffs' home was rendered uninhabitable by the fire. Plaintiffs had an insurance policy which reimbursed them for their necessary and reasonable increase in living expenses resulting from the fire. Plaintiffs rented another home, the rental payments were $600.00 per month, this lasted for six months, and plaintiffs paid out of their pocket $4,200.00 as rent (PX–11). Plaintiffs testified that during this period of time the mortgage payments on their burned home continued and they paid them. The additional $465.82 reimbursed by the insurance company to plaintiffs was not itemized or otherwise explained in the trial. Accordingly, that amount is not being considered.

■ It is apparent that plaintiffs in this case realized no gain in connection with the reimbursement by the insurance company of the rental payments in the total amount of $4,200.00. If there was any income in the ordinary and real sense of the word realized by anyone relating to these payments, it was the owner of the house that plaintiffs rented. With respect to the reimbursement by the insurance company to plaintiffs of the $4,-200.00, plaintiffs were no more than a conduit through which these funds passed.

If one of plaintiffs suffered a personal injury covered by insurance, the receipts of that insurance would be specifically excludable under section 104(a) (3) of the Internal Revenue Code of 1954. The same would hold true under section 104(a) (2) if plaintiffs had been compensated for personal injury not covered by insurance. While it is recognized that these statutory exclusions apply only to personal injuries, the same logic on which they are based would control the issue of the judicial exclusion from gross income of the payments made to the plaintiffs here. Congress has taxed income, not compensation.

The Court is unable to perceive the logic of including this sum of money, $4,200.00, in plaintiffs' gross income for the taxable year involved and holds that the Internal Revenue Service erroneously included that amount in plaintiffs' gross income for the year 1966, and plaintiffs should recover the resulting overpayment of income taxes for that year, together with interest.

The Clerk will notify counsel for plaintiffs to draft an appropriate judgment in accordance with this Memorandum and Order for submission to the Court by October 3, 1969, after first obtaining approval of opposing counsel.