NEIL F. MCCABE AND EVELYN C. MCCABE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1158–68.   Filed September 29, 1970.

*Philip G. Lind*, for the petitioners.
*R. Burns Mossman*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for the years 1964 and 1965 in the amounts of $220.95 and $676.64, respectively.

Petitioners did not allege errors in the adjustments made by respondent for the year 1964. Certain concessions have been made by petitioners with respect to the year 1965. The only question presented for decision is whether $2,843.78 received by the petitioners in 1965 from an insurance company for additional living expenses occasioned by the loss of use of occupancy of their home constituted taxable income to them under the provisions of section 61, I.R.C. 1954.[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

All of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. To the extent deemed pertinent the facts are summarized below.

Neil F. McCabe and Evelyn C. McCabe (herein called petitioners) are husband and wife whose legal residence was in Minneapolis, Minn., at the time they filed their petition in this proceeding. Their joint Federal income tax return for the year 1965 was filed with the district director of internal revenue at St. Paul, Minn.

In 1965 petitioners were owners of their home at 533 Clover Lane, Minneapolis, Minn. On January 30, 1965, the kitchen of their home was destroyed by fire. Smoke and water damage rendered the entire house uninhabitable.

At the time of the fire, petitioners' home was insured by the National Fire Insurance Co. of Hartford. Their fire insurance policy, under Coverage D, provided:

COVERAGE D—ADDITIONAL LIVING EXPENSE.

* * * With respect to Coverages A, B and C this policy covers the necessary increase in living expense resulting from loss by a peril insured against to the property covered hereunder incurred by the Named Insured to continue as nearly as practicable the normal standard of living of the Named Insured's household for the applicable period described in (a) or (b) below:

(a) The time required, with the exercise of due diligence and dispatch, to repair or replace such damaged or destroyed property;

(b) The time required for the Named Insured's household to become settled in permanent quarters.

This coverage includes the fair rental value of the described dwelling and appurtenant private structures with respect to any portion thereof rented or held for rental by an Insured and, as furnished by the owner, for the period of time required with the exercise of due diligence and dispatch to restore same to tenantable condition, less such charges and expenses as do not continue.

The periods described above shall not be limited by the expiration of this policy.

This Company shall also be liable under Coverage D for the period of time, not exceeding two weeks, while access to the premises is prohibited by order of civil authority, but only when such order is given as a direct result of damage to neighboring premises by a peril insured against.

Pursuant to Coverage D of the insurance policy, the petitioners received from the insurer during the taxable year 1965 the sum of $2,843.78 for additional living expenses to continue as nearly as practicable the normal standard of living of petitioners' household for the time required, with the exercise of due diligence and dispatch, to repair the damaged premises. The petitioners and respondent have agreed the $2,843.78 received by petitioners was not excessive.

Petitioners did not include the $2,843.78, or any part thereof, as income on their Federal income tax return for the year 1965.

As the stipulated facts show, the petitioners lost the use and occupancy of their home as a result of a fire in their kitchen. Through a provision in their fire insurance policy, they were reimbursed for the additional expense of maintaining substitute living quarters. The policy did *not* relieve them of any of their normal living expenses. Thus, the only issue is whether the insurance proceeds paid to petitioners in 1965 for additional living expenses are income within the meaning of section 61, which defines gross income as "all income from whatever source derived."

By including the insurance proceeds in petitioners' taxable income for 1965, respondent has relied upon the following authorities: *Millsap* v. *Commissioner*, 387 F. 2d 420 (C.A. 8, 1968), affirming 46 T.C. 751, 762 (1966); *McGuire* v. *United States* (N.D. Cal. 1970, 25 A.F.T.R. 2d 70-1127, 70-1 U.S.T.C., par. 9384); *Arnold* v. *United States*, 289 F. Supp. 206 (E.D. N.Y. 1968); and Rev Rul. 59-360, 1959-2 C.B. 75. Petitioners contend that these decisions are erroneous, relying instead upon *Conner* v. *United States*, 303 F. Supp. 1187 (S.D. Tex. 1969), on appeal (C.A. 5). Such amounts, received on or after January 1, 1969, are now specifically excluded from gross income by section 123, as added by Tax Reform Act of 1969.

Mindful of the adverse legislative response to our opinion in *Millsap* (See S. Rept. No. 91-552, 91st Cong., 1st Sess., 1969-3 C.B. 596 fn. 1; sec. 123), we have carefully considered the petitioners' position. We do not agree with respondent that the prospective effect of section 123 necessarily forecloses reexamination of the prior case law. *Haggar Co.* v. *Helvering*, 308 U.S. 389 (1940); *Werner* v. *United States*, 264 F. 2d 489 (C.A. 7, 1959); cf. *Hanover Bank* v. *Commissioner*, 369 U.S. 672 (1962).

Petitioners' position, in essence, is that they are no better off then they were before the fire. They argue that it is unfair to tax them merely because the nontaxable use and occupancy of their house was temporarily and involuntarily converted to cash.

While we are sympathetic to the petitioners' arguments, we are not persuaded by them. The question of whether they are better off or not depends upon whether we measure from the time before the fire or the time immediately thereafter. In any event, the involuntary conversion of property into cash may result in a gain, even though the taxpayer is economically no better off. See secs. 1033, 1034. The conversion may provide the occasion for recognizing an existing gain.

The use and occupancy of property is to the property itself as inteerst is to a bond, i.e., it is the fruit of the investment. But whereas

the owner of a bond must pay tax on the interest, the owner of a house does not pay tax on his own use and occupancy of it. See *Helvering* v. *Ind. Life Ins. Co.*, 292 U.S. 371 (1934). If he rents his house to another, however, he must pay tax on the rent he receives.

Insurance proceeds which are received in lieu of income items are themselves treated as income. *Hort* v. *Commissioner*, 313 U.S. 28 (1941); *Miller* v. *Hocking Glass Co.*, 80 F. 2d 436 (C.A. 6, 1935); *Massillon-Cleveland-Akron Sign Co.*, 15 T.C. 79 (1950); *The International Boiler Works Co.*, 3 B.T.A. 283 (1926). On the other hand, proceeds which represent a return of basis are nontaxable. Cf. secs. 1033, 1034. Proceeds paid in lieu of use and occupancy are not a return of basis; they are paid in lieu of the fruit of the investment. The pivotal question then is whether the proceeds should be included because they have no basis, or excluded because they are a substitute for a nontaxable type of income.

The cases which have considered use and occupancy proceeds in a business context have uniformly treated them as income (with recognition postponed under section 1033).[2] *Shakertown Corporation* v. *Commissioner*, 277 F. 2d 625 (C.A. 6, 1960); *Williams Furniture Corporation*, 45 B.T.A. 928 (1941); *Piedmont-Mt. Airy Guano Co.*, 3 B.T.A. 1009 (1926); see *Marcalus Manufacturing Co.*, 30 T.C. 1345, 1350 (1958). It should be noted, however, that the taxpayers were better off with an immediate business expense for temporary replacement of their quarters, and a delayed capital gain, than they would have been if they had asked that the transaction be treated as a wash. In those cases the Commissioner argued for immediate income and offsetting deductions. This offset position is of no aid to the petitioners herein because they cannot claim the personal deduction. Sec. 262.

There are two grounds for sustaining respondent's determination. First, we think the lack of basis, rather than the nontaxable nature of the converted property, controls the disposition of this case. Cf. *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426 (1955); *Gen. Investors Co.* v. *Commissioner*, 348 U.S. 434 (1955). Second, we are reluctant, without good reason and authority, to overturn the established case law that insurance proceeds which compensate for additional living expenses constitute gross income within the purview of section 61(a). In *Conner* v. *United States, supra,* which is relied upon so heavily by petitioners, the District Court concluded that under section 61(a), in order for there to be income, there must be gain. Since these petitioners are without a basis in the receipts, we think they have received a gain which is taxable under section 61(a). To maintain

---

[2] Neither party has suggested that the provisions of secs. 1033 and 1934 may be applicable to the present case.

consistency and uniformity in the treatment of taxpayers who, prior to January 1, 1969, received insurance proceeds as reimbursement for additional living expenses resulting from the loss of use of a casualty-damaged residence, we shall adhere to the opinion in *Millsap* v. *Commissioner, supra.*

For the reasons stated herein,

*Decision will be entered for the respondent.*

