EDMUND W. CORNELIUS AND NADINE E. CORNELIUS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5396–68.    Filed August 9, 1971.

*George T. Rita* and *William H. Howe,* for the petitioners.
*James J. Keightley,* for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Year | Deficiency |
| --- | --- |
| 1961 | $3, 108. 97 |
| 1962 | 409. 35 |
| 1964 | 1, 873. 12 |

There is no dispute as to the amount of the casualty loss for the house, an appraisal fee paid to the insurance adjusters, and the cost of debris removal. Three issues are presented for our decision: (1) What was the fair market value of the household contents of petitioners' home immediately before the fire of March 28, 1964? (2) Are the expenses ($210) incurred by petitioners to build a fence around the destroyed house allowable as part of the casualty loss? (3) Did

petitioners realize income in 1964 when they received $4,492.20 for additional living expenses paid by the insurance company under the terms of their homeowners insurance policy?

FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly.

Edmund W. and Nadine E. Cornelius (herein called petitioners) are husband and wife whose legal residence was Rockville, Md., when they filed their petition in this case. They filed their joint Federal income tax returns for the years 1961, 1962, and 1964 with the district director of internal revenue at Baltimore, Md.

On March 28, 1964, petitioners' house, located at 13200 Cleveland Drive, Rockville, Md., and its household contents were totally destroyed by fire. Petitioners had fire insurance on the contents of the house which provided for a maximum coverage of $14,400. The goods contained in the house which were destroyed in the fire were household contents of all types, including jewelry, clothing, china, silver, and furniture. Petitioners were paid the maximum coverage of $14,400 by the insurance company on account of the loss of the contents by fire.

The fair market value of the house and its contents immediately following the fire was zero.

Following the casualty, petitioner employed Goodman, Gable and Gould, certified public adjusters, to assist Nadine Cornelius in preparing an inventory of the household contents destroyed by the fire. A complete, itemized inventory of the household contents was prepared. The inventory contains a description of all the items of property destroyed, their cost, and their approximate age. The total cost of the household contents was $55,568.37. The property depreciated in value by $13,047.40. The amount of the loss sustained on the household contents was $42,520.97, which was the fair market value (cost less depreciation) immediately before the fire. The adjuster for the insurance company thought the amount of the loss claimed was reasonable and represented the fair market value of the personal property destroyed in the fire.

Petitioners claimed a casualty loss of $28,120.97 ($42,520.97 less the insurance recovery of $14,400) on their Federal income tax return for 1964 with respect to their household goods. Respondent disallowed the claimed loss deduction on the household contents to the extent of $27,316.97 because he determined the fair market value of the personal property to be $15,304 immediately before the fire. Such amount ($15,304) less the insurance proceeds of $14,400 less the $100 statutory limitation on a personal casualty loss resulted in respondent's determination of a net loss deduction of $804.

In his notice of deficiency dated August 28, 1968, respondent determined that petitioners were not entitled to net operating loss deductions of $13,401.90 for the year 1961 and $1,574.42 for the year 1962 claimed by petitioners' application for tentative carryback adjustments for the casualty loss year ended December 31, 1964.

After the fire the petitioners had a 7-foot fence built around the destroyed house at a cost of $210. The fence was erected to prevent people from getting hurt or getting near the destroyed house. Petitioners claimed the cost of the fence as part of the casualty loss for 1964. It was disallowed by respondent as being a personal expense.

Because of the fire the petitioners had to live in a motel for 1 month and then rent another house until theirs was rebuilt. For living expenses incurred after the fire, petitioners were reimbursed $4,492.20 by the insurance company under the terms of their homeowners policy. They did not include the reimbursement for living expenses in their gross income on their 1964 Federal income tax return. In his notice of deficiency respondent included the reimbursed living expenses in petitioners' gross income for 1964.

### OPINION

1. *Amount of loss sustained on household contents.*—The applicable statute [1] and regulations [2] are set out below. Where property is de-

---

[1] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

(b) AMOUNT OF DEDUCTION.—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\*          \*          \*          \*          \*          \*          \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.

[2] Sec. 1.165-7(a)(2), Income Tax Regs., provides in part:

(2) *Method of valuation.* (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal.

Sec. 1.165-7(b), Income Tax Regs., provides in part:

(b) *Amount deductible*—(1) *General rule.* In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either—

(i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or

(ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved.

stroyed by fire, it is settled law that the proper measure of the loss sustained in the case of nonbusiness property is the difference between the value of the property immediately before the casualty and its value immediately thereafter, not to exceed cost or other adjusted basis, and diminished by the amount compensated by insurance or otherwise. See *Helvering* v. *Owens*, 305 U.S. 468, 471 (1939), where the Supreme Court said:

and as the property involved was subject to depreciation and of less value in the taxable year, than its original cost, we think § 113(b)(1)(B) must be read as a limitation upon the amount of the deduction so that it may not exceed cost, and *in the case of depreciable non-business property may not exceed the amount of the loss actually sustained in the taxable year, measured by the then depreciated value of the property.* * * * [Emphasis added.]

See also I.T. 4032, 1950-2 C.B. 21, which provides:

It is held that the amount of loss which is deductible under section 23(e)(3) of the Code, *supra*, in the case of depreciable nonbusiness property, is the difference between the value of the property immediately preceding the casualty and its value (including salvage value) immediately after the casualty, but not in excess of an amount equal to the adjusted basis of the property, reduced by any insurance or other compensation received.

It is agreed by the parties that (1) petitioners' cost or other adjusted basis in the property exceeds its fair market value, (2) the fair market value of the household contents immediately after the fire was zero, and (3) the amount of the insurance recovery was $14,400. Hence the narrow issue we must resolve is the "fair market value" of the household contents immediately before the fire because that will determine the amount of the casualty loss deduction to which the petitioners are entitled. Petitioners claim that the value of the personal property immediately before the fire was $42,520.97, while respondent contends that its value was $15,304, as indicated in his notice of deficiency. On brief, however, respondent states that the value of "the personal property contained in the house would be between $14,000.00 and $20,000.00."

The amount of the "loss actually sustained" is, of course, a question of fact. Based on the evidence contained in this record, we hold, as reflected in our findings of fact, that the fair market value of the household contents immediately before the fire was $42,520.97. Within the statutory context of section 165 and within the scope of *Helvering* v. *Owens*, *supra*, we view the term "fair market value" under these particular circumstances as being the cost of the household contents less their depreciation in value.

In accordance with the universally accepted principle that a contract of fire insurance is intended to afford *indemnity for loss*, the insured is allowed to recover no more than the *actual value* of his property at the time of loss. Unless the policy is valued, the sum set forth

upon its face is intended merely as the maximum limit of the insurer's liability, not the measure of it. "Actual value" is a term susceptible of different interpretations. With respect to household goods and wearing apparel, it is generally held that the amount of recovery for a loss is not limited to the price which could be realized by a sale in the market, but that the insured may recover the *value* of the goods to him, based on his actual money loss resulting from being deprived of the property. 63 A.L.R. 240; 61 A.L.R. 2d 711, 733. "Actual value" generally means what the property is worth, allowing for depreciation. For the various tests or criteria governing determination of value, see 15 Couch, Insurance, secs. 54:134–54:138 (2d ed. 1966). The value of destroyed property must be ascertained in a reasonable way, and not by attempting to show, as respondent has done through his "expert" witness, what the personal property would have brought if hawked off by a secondhand dealer or at a forced sale. As early as *Marsh* v. *Union Pacific Ry. Co.*, 9 Fed. 873, 875–876 (1882), a Federal circuit court said:

> Whenever it appears that there is anything like an established price in the market, for which the articles in controversy can be replaced, that price will measure the damages for converting such articles. But for household goods, more or less worn, there is no established price, unless it be that at which second-hand goods of the same kind are sold. And although people who discontinue housekeeping may be compelled to accept that price, no one will contend that it is the full value of the goods. The fact that goods in use, if sold at all must be sold at a sacrifice, is too plain for argument, and therefore the price of such goods in market will not be adequate compensation to one who is deprived of his goods by a wrong-doer. Perhaps the best way to arrive at the value of such goods would be to show the price in market of new goods of the same kind, and then show, as nearly as possible, the extent of depreciation from use. * * *

We have applied the so-called "broad evidence" or *McAnarney* rule to determine the *actual value* of the household contents at the time of the fire. That rule is aptly expressed in *Nebraska Drillers* v. *Westchester Fire Ins. Co.*, 123 F. Supp. 678, 681 (D. Col. 1954):

> What the cash value of property is can be ascertained or estimated from its reproduction value, with proper deduction for depreciation, by the terms of the policy itself, and under the authorities. However, it is often necessary to look to various factors in order to arrive at the ultimate fact. To ascertain a fire loss not only is the express evidence concerning original cost, replacement value and depreciation to be looked to, but the trier of the facts should call to his aid every other fact and circumstance which logically would tend to the formation of a correct estimate of the loss, including original cost, the cost of replacement, depreciation, the opinions of witnesses, declarations against interest and the uses to which the property might have been put. *McAnarney* v. *Newark Fire Insurance Co.*, 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149.

According to petitioners' witness, John Brenner, the adjuster who represented the insurance company, the value of the personal property, measured by its cost less a depreciation factor of 20 to 25 percent, was

$42,520.97 immediately prior to the casualty. The figure strikes us as fair and reasonable. This appears to be an accepted practice of the casualty insurance company in determining the actual value of the property destroyed, and thus the amount of the loss sustained. It is the method of computation used by the insurance adjusters, who are obviously interested in keeping the "value" of the property low for claim purposes. Accordingly, we decide this issue in favor of the petitioners.

2. *Cost of fence.*—Petitioners paid $210 to have a fence built around their destroyed house. This was a personal expense incurred by them to prevent future loss or injury. It was not a part of the casualty loss to the house within the purview of section 165. It is not analogous to cleanup expenses. Cf. *Lena L. Steinert*, 33 T.C. 447, 450 (1959), and other cases cited therein. Since the purpose of the fencing was to protect petitioners from potential tort claims, the amount paid for the fencing is not a loss because damages for tort claims are not deductible under section 165, which is limited to losses of or to property belonging to the taxpayer. See and compare *Alexandre R. Tarsey*, 56 T.C. 553 (1971); *B. M. Peyton*, 10 B.T.A. 1129 (1928). We sustain respondent's determination on this issue.

3. *Reimbursement for additional living expenses.*—The $4,492.20 received by petitioners from the insurance company to reimburse them for some of their living expenses incurred after, and as a result of, the fire is includable in their gross income for the year 1964. The disposition of this issue is controlled by the decisions in the following cases: *Millsap* v. *Commissioner*, 387 F. 2d 420 (C.A. 8, 1968), affirming 46 T.C. 751, 762 (1966); *Neil F. McCabe*, 54 T.C. 1745 (1970); *McGuire* v. *United States* (N.D. Cal. 1970, 25 A.F.T.R 2d 70–1127, 70–1 U.S.T.C. par. 9384); *Arnold* v. *United States*, 289 F. Supp. 206 (E.D. N.Y. 1968); *Eschauzier* v. *United States* (D. Conn. 1969, 23 A.F.T.R. 2d 69–1200, 69–1 U.S.T.C. par. 9273). But see contra *Conner* v. *United States*, 439 F. 2d 974 (C.A. 5, 1971), affirming in part and reversing in part 303 F. Supp. 1187 (S.D. Tex. 1969).

In the Tax Reform Act of 1969 Congress added a new exclusion, section 123 of the Internal Revenue Code. It provides that a taxpayer, whose residence is damaged or destroyed by fire or other casualty and who must temporarily find another residence while his home is being repaired, is entitled to exclude from his gross income any insurance payments received on or after January 1, 1969, as reimbursement for living expenses incurred for himself and members of his household during such period. Unfortunately for the petitioners in this case, Congress did not provide that section 123 would operate retroactively. See S. Rept. No. 91–552, 91st Cong., 1st Sess., 1969–3 C.B. 596, fn. 1. In *Neil F. McCabe*, *supra* at 1748, we expressed our

disagreement with the decision of the District Court in *Conner*. We also disagree with the Fifth Circuit's interpretation of the law prior to the enactment of section 123. And we said in *McCabe* (pp. 1748–1749):

> To maintain consistency and uniformity in the treatment of taxpayers who, prior to January 1, 1969, received insurance proceeds as reimbursement for additional living expenses resulting from the loss of use of a casualty-damaged residence, we shall adhere to the opinion in *Millsap* v. *Commissioner, supra.*

In accord with our own precedents, we decide this issue for the respondent.

To reflect the conclusions stated herein and the concessions made,

*Decision will be entered under Rule 50.*