JOHN L. YORK and ELIZABETH G. YORK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
York v. Commissioner
Docket No. 1714-72.
United States Tax Court
T.C. Memo 1974-222; 1974 Tax Ct. Memo LEXIS 95; 33 T.C.M. (CCH) 988; T.C.M. (RIA) 74222; August 28, 1974, Filed. John L. York, pro se. Edward P. Phillips, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $225.89 in petitioners' Federal income tax for the year 1969. Two issues are presented for our decision: (1) Whether petitioner Elizabeth G. York is entitled to a retirement income credit for 1969; and (2) whether petitioners are entitled to a casualty loss deduction for 1969 in excess of the amount allowed by respondent. The facts are fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners John L. York and Elizabeth G. York were legal residents of Atlanta, Georgia, when they filed their petition in this proceeding. They filed a joint Federal income tax return for the taxable year 1969 with the Internal Revenue Service Center, Chamblee, Georgia. Elizabeth G. *97 York became 62 years of age on April 5, 1969, and began receiving social security payments in the amount of $48.90 per month in April 1969. During the taxable year 1969, she received a total of $440.10 in social security payments. She also received dividends and interest in 1969 in the amounts of $129 and $164.10, respectively. John L. York is a retired Federal Hearing Examiner. In 1969 he received $8,535 as a civil service retirement annuity. He was involved in an automobile accident in Boydton, Mecklenburg County, Virginia, on or about July 29, 1969, wherein his automobile, a 1967 Chevrolet sedan, was damaged. This automobile was purchased in July 1967 for an amount in excess of $3,000. The fair market value of the automobile before the accident was $1,700. Its fair market value after the accident was $600. The cost of repairing the automobile after the accident was $837.60. John L. York was reimbursed for such repairs in the amount of $787.60 under the terms of his automobile insurance policy with the Aetna Casualty and Surety Company. In 1969 John L. York paid the Aetna Casualty and Surety Company the amount of $69 for automobile collision insurance coverage. On *98 their Federal income tax return for 1969 the petitioners claimed a credit for retirement income in the amount of $391.19. In his statutory notice of deficiency the respondent determined that the correct amount of the retirement credit was $228.60 because Elizabeth G. York had no retirement income in that year. In addition, petitioners deducted the amount of $381.40 on their 1969 Federal income tax return for a casualty loss to an automobile. In his statutory notice of deficiency the respondent determined that the correct amount of the casualty loss was $212.40. 1. Retirement Income Credit. The parties agree that petitioners are entitled under section 37, Internal Revenue Code of 1954, [1] to a retirement credit in the amount of $228.60 for retirement income attributable solely to John L. York. However, it is also apparent that because Elizabeth G. York was under the age of 65 in 1969, she is eligible for a limited retirement income credit under section 37(c) (2) only for income she received that year from either a pension or an annuity under a public retirement system. Petitioners contend that Elizabeth G. York did receive such retirement income from *99 social security payments of $440.10 she received in 1969. Respondent, on the other hand, argues that social security payments are not includable in a retired person's "gross income" in order to qualify as retirement income under section 37(c) (2), and that they do not constitute "pensions or annuities" within the meaning of that section, citing Rev. Rul. 70-217, 1970-1 C.B. 13. Respondent thus concludes that Elizabeth G. York did not have any "retirement income" in 1969 and that she is not entitled to any credit for that year for such income under section 37. We agree with the respondent. It is clear that the legislative purpose in enacting section 37 was to eliminate the disparity between tax exempt treatment of social security payments and the taxation of other retirement income received by retired persons. As this Court stated in Warren R. Miller, Sr., 51 T.C. 755, 760 (1969): Prior to the enactment of section 37, the Commissioner, in 1941, issued a ruling that retirement benefits under the social security program were nontaxable. I.T. 3447, 1941-1 C.B. 191. Yet pensions under most other publicly administered retirement programs, industrial *100 retirement pensions, and retirement income derived from individual arrangements remained taxable. Section 37 was added to the tax law by the 1954 Code for the express purpose of ending this discrimination by granting persons receiving taxable income a tax credit roughly equivalent in value to the tax exemption of social security benefits. * * * The legislative history of section 37 plainly indicates that any amount of retirement income an individual receives is to be reduced, for purpose of computing the retirement income credit, by any social security income which is excluded from gross income. See S. Rept. No. 1622, 83d Cong., 2d Sess. (1954); S. Rept. No. 830, 88th Cong., 2d Sess. (1964); H. Rept. No. 1149, 88th Cong., 2d Sess. (1964). See also 1 Rabkin & Johnson, Federal Income Gift and Estate Taxation, sec. 1.10 at p. 153b (1969 Supplement) and 5 Mertens, Law of Federal Income Taxation, sec. 32.06, p. 16 (Malone ed. 1967). In view of such legislative history, and since these social security payments were not includable in the gross income of Elizabeth G. York in 1969, they do not qualify as retirement income under the explicit language of section 37(c) (2). Consequently, *101 we must sustain respondent's disallowance of this amount as not qualifying for a retirement income credit. 2.Casualty Loss. On their joint Federal income tax return, the petitioners claimed as part of a casualty loss in 1969 the amount of $69, which is the cost of automobile collision insurance they purchased that year. Petitioners claim this amount is deductible under section 165, while respondent contends that an allowable casualty loss deduction under section 165 does not include the cost of any premiums paid by a taxpayer to purchase automobile collision insurance. We agree with the respondent. Section 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Under section 165(b) the amount of allowable loss is equal to the adjusted basis of the destroyed property as provided in section 1011. Under section 165(c) (3) a casualty loss is deductible only to the extent that it exceeds $100. See also section 1.165-7(b), Income Tax Regs.
The parties have stipulated that the petitioners' cost *102 basis in their automobile was in excess of $3,000; that the fair market value of the automobile immediately prior to the accident in 1969 was $1,700; and that its fair market value immediately after the accident was $600. Petitioners recovered $787.60 under their collision insurance policy for subsequent repairs to their automobile. Despite petitioners' claim, section 165 and the regulations thereunder make it clear that no adjustment for the cost of premiums paid for collision insurance is either intended or allowable as an additional deduction for casualty losses. Only the actual value of the property destroyed (here petitioners' automobile), less any insurance proceeds received and a statutory exclusion of $100, is allowable as a casualty loss deduction under section 165. Helvering v. Owens, 305 U.S. 468 (1939). We noted in Edmund W. Cornelius, 56 T.C. 976, 981 (1971), that the expense paid by the taxpayers to have a fence built around their destroyed house was a personal expense incurred by them to prevent future loss or injury, and was not a part of the earlier casualty loss to their house within the purview of section 165. We think our reasoning *103 there applies equally here. The expense paid by petitioners to insure themselves against collision was a personal expense incurred by them to prevent any future loss and injury, long before the casualty loss in issue occurred. As was true of the cost of building a fence in Edmund W. Cornelius, supra, we are not persuaded that the earlier expense by petitioners for the collision insurance premium is sufficiently connected to the subsequent destruction of petitioners' automobile to fall within the Congressional intent in legislating a loss deduction tied to the value of the property actually destroyed. In fact, the plain language of section 165 indicates that Congress diminished any allowable deduction by the amount of insurance proceeds recovered by a taxpayer. Since Congress dealt squarely with the impact of insurance coverage on the amount of a casualty loss which would be deductible, we must assume that their specific directions (omitting any deduction for the cost of insurance premiums) intentionally limited any casualty loss deduction to the value of property destroyed. Thus, the correct computation of petitioners' allowable casualty loss deduction for 1969 is as *104 follows: Fair market value of automobile prior to accident
$1,700.00
LESS: Fair market value after accident
600.00
Value of property destroyed
$1,100.00
LESS: Insurance received
787.60
Net Loss
$ 312.40
LESS: Statutory exclusion
100.00
Allowable deduction
$ 212.40
Accordingly, we sustain respondent's determination on this issue. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩