WILLIAM J. and ELEANOR M. CORCORAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Corcoran v. Commissioner
Docket No. 7505-74.
United States Tax Court
T.C. Memo 1976-222; 1976 Tax Ct. Memo LEXIS 179; 35 T.C.M. (CCH) 972; T.C.M. (RIA) 760222; July 19, 1976, Filed Eleanor M. Corcoran, pro se. Paul G. Topolka, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Amount
1967
$ 731.00
1968
941.00
1969
842.00
1970
871.00
1971
674.00
Total
$4,059.00
Since other items of adjustment were not contested by petitioners, the only issue for decision is the amount that petitioners are entitled to deduct under section 165[1]/ as a casualty loss in 1970. *181 FINDINGS OF FACT Petitioners William J. Corcoran and Eleanor M. Corcoran, husband and wife, were legal residents of West Dundee, Illinois, at the time their petition was filed with this Court. They filed their joint Federal income tax returns for 1967 through 1971 with the Internal Revenue Service Center, Kansas City, Missouri. At the trial petitioners were represented by Eleanor M. Corcoran, and she will be referred to as "petitioner" or "Mrs. Corcoran." On December 15, 1970, a fire in petitioners' 7-room apartment located in Chicago, Illinois, destroyed most of their personal possessions and household goods. Following the fire petitioners compiled a 22-page list, stating the quantity, age, and estimated original cost, where applicable, of those items which had been destroyed. Based on their memory of the original cost of the property and their estimates of its fair market value immediately prior to its destruction, petitioners calculated their loss to be $33,830. Included in petitioners' property list were the following items located in the apartment but not owned by petitioners at the time of the fire: Estimated Property Item
Original Cost
Jewelry case
$ 13.00
Omega watch
135.00
Hamilton watch
70.00
Diamond cuff links
200.00
Norelco razor
29.00
Fishing equipment
200.00
Suitcase, attache case
100.00
Clothes
1,000.00
Total
$1,747.00
*182 Also included in the list were items which petitioners had received over the years as gifts from Mrs. Corcoran's mother and which they valued at their replacement cost prior to the fire as follows: Item
Amount
Haviland china
$2,500.00
Gold pendant watch
300.00
12-inch silver tray
15.00
Total
$2,815.00 There is no direct evidence in the record as to the amount paid by petitioner's mother for these items or their fair market value at the time she gave them to petitioners. Following the fire petitioners submitted the property list to their insurer, Allstate Insurance Company (hereinafter Allstate or the insurance company), to support a claim under their casualty insurance policy. The policy provided that petitioners were entitled to reimbursement to the extent of the actual cash value of their destroyed property. The term "actual cash value" was defined in the policy as replacement cost less depreciation. The maximum coverage under the policy, however, was $8,000. The adjuster who handled petitioners' claim inspected petitioners' household contents personally on at least two different occasions, the first occurring on December 18, 1970, 3 days *183 after the fire. He found the apartment to be heavily furnished; the pieces of furniture were of average quality and ranged from 5 to 10 years in age. He observed no items which, in his opinion, had exceptional or antique value. Based on his personal observation of the household contents and after reviewing petitioners' inventory list, the adjuster concluded that the actual cash value of petitioners' property immediately prior to the fire was somewhere between 35 and 50 percent of the amount claimed. In arriving at this opinion, the adjuster assumed that petitioners owned all the items on the sheet and that the age and estimated original cost were approximately correct. During February and April 1971, Allstate paid petitioners $8,000 for the property damage and destruction, the maximum amount to which they were entitled under the insurance policy since the actual cash value of the loss exceeded the policy limits, plus $1,350.05 for additional living expenses. Included in the $8,000 was the sum of $492.50 for cleaning charges. On their 1970 Federal income tax return, petitioners claimed a casualty loss deduction in the amount of $25,730 and, based upon net operating loss carrybacks *184 resulting from the claimed casulaty loss, also claimed refunds of all taxes paid for the years and in the amounts as follows: Year
Amount
1967
$ 731.00
1968
941.00
1969
842.00
1970
1,080.00
Total
$3,594.00
Petitioners arrived at their casualty loss deduction of $25,730 by taking the aggregate of the estimated original costs and replacement costs as shown in their inventory list, $33,830, and reducing this amount by the $8,000 insurance proceeds received from Allstate and by the $100 limitation imposed by section 165(c)(3). The following refunds for the years involved and in the respective amounts, plus interest, were made to and received by petitioners: Date of Refund
Year
Amount
Interest
Jan. 31, 1972
1967
$ 731.00
$46.02
Jan. 31, 1972
1968
941.00
59.24
Jan. 31, 1972
1969
842.00
53.01
May 28, 1971
1970
1,080.00
None
May 1, 1972
1971
959.00
None
On their 1971 return, petitioners claimed a "casualty loss deduction from fire not yet recovered" in the amount of $22,136. They arrived at this figure by taking the $25,730 claimed casualty loss deduction in 1970 and reducing it by $3,594, *185 the aggregate amount of the taxes refunded to them for the taxable years 1967 through 1970. In the notice of deficiency, respondent disallowed petitioners' casualty loss deduction of $25,730 for 1970 and determined that there were deficiencies in income tax due from them in the amounts set forth in the first paragraph hereof. In his requested Findings of Fact, respondent calculated petitioners' deductible casualty loss for 1970 under section 165 to be $4,485, computed as follows: "Estimated original cost"
$33,830.00
Less: Items on inventory schedule which
petitioners did not own
(1,747.00)
Items on inventory schedule in
which petitioners had no basis
(2,815.00)
Revised "estimated original cost"
$29,268.00
Allowance for depreciation
[1]/ 43%
Fair market value of petitioners'
loss on household contents
($29,268 X 43%)
$12,585.00
Less: Insurance recovery
(8,000.00)
Statutory limitation
(100.00)
Deductible casualty loss
$ 4,485.00
*186 OPINION Section 165(a)[2]/ allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual who sustains a casualty loss of "property not connected with a trade or business," section 165(c)(3)[3] provides that if the loss is to be deductible under section 165(a), it must "arise from fire, storm, shipwreck, or other casualty." The subsection also provides that the loss shall be deductible "only to the extent that the amount of loss * * * arising from each casualty * * * exceeds $100." *187 The measure of a casualty loss in respect of non-business property is the difference between the fair market value of the property immediately before the casualty and its value immediately thereafter, not to exceed, however, the adjusted basis of the property. Helvering v. Owens,305 U.S. 468 (1939); G.C.M. 21013, 1939-1 C.B. (Part 1) 101; sec. 1.165-7(b)(1), Income Tax Regs.
Section 165(b) provides that "the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property." To the extent the loss exceeds any recovery that is received and the $100 limitation imposed by section 165(c)(3), it is deductible. The parties acknowledge that petitioners sustained a casualty loss in 1970 as a result of the fire and that petitioners received $8,000 from the insurance company.The question is the amount of the casualty loss deduction which should be allowed to petitioners. Petitioners argue that the "estimated original cost" of $33,830, [4]/ as shown in the 22-page inventory schedule, represents their adjusted basis in, as well as *188 the fair market value of, the destroyed property immediately before the fire. Accordingly, they contend their deductible casualty loss was $25,730, having reduced the "estimated original cost" by only the $8,000 insurance proceeds received and by the $100 statutory limitation. Respondent argues that petitioners' "estimated original cost" ($33,830) of property destroyed in the fire must, at the very least, be reduced by (1) their valuation of the property which they did not own ($1,747), (2) their valuation of the property in which they can show no basis, i.e., the gifts from Mrs. Corcoran's *189 mother ($2,815), and (3) a reasonable depreciation rate. Respondent contends the allowable casualty loss is $4,485. With respect to respondent's first contention, the record clearly shows that petitioners included in their casualty loss deduction property which they did not own, valued by them in the amount of $1,747. Petitioners are not entitled to a deduction for a casualty loss for destroyed property which they did not own. Thomas J. Draper,15 T.C. 135 (1950). Accordingly, petitioners must reduce their "estimated original cost" by this amount.
With respect to respondent's second contention, petitioners received as gifts from Mrs. Corcoran's mother a set of Haviland china, a gold pendant watch, and a 12-inch silver tray, which they included in their inventory list at a total replacement cost estimated to be $2,815. Since petitioners received these items by gift, their basis in the property is the adjusted basis of the donor or last preceding owner who acquired the property other than by gift, or the fair market value of the property at the time of the gift, whichever is lower, secs. 1011[5]/ and 1015(a); [6]sec. 1.1015-1(a)(1), Income Tax Regs. *190 There is no direct evidence in the record to indicate the amount paid by Mrs. Corcoran's mother for these items; nor is there any direct evidence to indicate their fair market value at the time they were given to petitioners. Yet these items had substantial value immediately before they were destroyed and had a basis in petitioners' hands even though the amount of such basis was not established by direct proof. Whatever records petitioners may have had to aid in establishing the basis of these items were evidently destroyed in the fire. Taking into account this fact as well as the fact that petitioner appeared pro se, we find that these items acquired by gift had a basis of $1,210.[7] See Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930).
*191 With respect to respondent's third contention, petitioners did not deduct any amount for reasonable depreciation in computing the fair market value of the remaining household contents (i.e., the items not falling in the first and second categories above). In Edmund W. Cornelius,56 T.C. 976, 979 (1971), this Court stated that the phrase "fair market value" with respect to household contents means the cost of such property reduced by a reasonable depreciation factor. The claims adjuster who handled petitioners' fire loss determined that the actual cash value of the destroyed property immediately prior to the fire was between a range of 35 and 50 percent of petitioners' "estimated original cost," assuming that petitioners owned all the items in the inventory list and that the age and estimated original cost were approximately correct. On consideration of the entire record, we believe the claims adjuster's conclusion is a reasonable one. Employing 43 percent as the midpoint of his value estimate range of "estimated original cost," we find that $12,585 fairly represents the fair market value of the remaining property before the casualty. That amount, plus the basis *192 of $1,210 for the property acquired by gift, less the $8,000 recovered from the insurance company and the $100 limitation imposed by section 165(c)(3), is the casualty loss deduction to which petitioners are entitled for 1970. Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
1. /↩ This percentage was determined by respondent as the midpoint between 35 and 50 percent, the range in which the insurance claims adjuster found petitioners' actual cash value of the property to lie immediately before the fire.
2. /SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. ↩
3. Sec. 165(c)(3) provides as follows: (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * *↩
4. /↩ Included in this amount are certain items which Mrs. Corcoran claimed at trial were stolen from petitioners' apartment after the fire. Although petitioners' insurance policy with Allstate provided additional coverage for the loss of personal property due to theft, petitioners filed no theft claim; rather, they lumped these items into their fire loss insurance claim. Since we do not believe that there exists sufficient evidence in the record to show that these items were in fact stolen, we have treated them as part of petitioners' claim for a deduction for a casualty loss due to fire.
5. /SEC. 1011. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016. ↩
6. SEC. 1015. BASIS OF PROPERTY ACQUIRED BY GIFTS AND TRANSFERS IN TRUST. (a) Gifts After December 31, 1920.--If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. * * * ↩
7. This figure represents approximately 43 percent of the values of these items shown in the inventory list submitted to the insurance company.↩