T.C. Summary Opinion 2001-27


UNITED STATES TAX COURT


TRACY M. COLTER AND ROBERT N. COLTER, Jr., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20771-98S.                    Filed March 9, 2001.


Tracy M. Colter and Robert N. Colter, Jr. pro sese.

<u>Andrew M. Winkler</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 1995.  Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $2,741 deficiency in petitioners' 1995 Federal income tax and a $548.20 penalty under section 6662. The issue for decision is whether petitioners are entitled to a casualty loss deduction in excess of the amount allowed by respondent.

Some of the facts have been stipulated and are so found. Petitioners are, and were during all relevant periods, married to each other. At the time the petition was filed, they resided in Fredonia, Kentucky.

Sometime in early 1993, petitioners and their children moved from a rented house in Nashville, Tennessee, into a 3-bedroom, 2-bath, ranch-style brick house that they purchased in Hendersonville, Tennessee (the Hendersonville residence). On July 7, 1995, one of petitioners' daughters plugged a vacuum cleaner into an electrical outlet located in petitioners' bedroom. Through some fault in either the vacuum cleaner or the outlet, a fire started in that bedroom that caused substantial damage to the Hendersonville residence and destroyed or badly damaged most of the personal property located in the house.

At the time, petitioners were insured against fire losses by the Westfield Companies (Westfield). Under the terms of their insurance coverage, subject to various conditions and limitations, petitioners were entitled to recover the replacement

cost of personal property damaged or destroyed by fire. As a result of the fire, petitioners received $118,970.92 (less the $250 deductible attributable to personal property losses) from Westfield. This amount includes $49,686.02 for damages to the Hendersonville residence, $11,909.90 for additional living expenses, and the policy limits of $57,375 (less the deductible) for damages to or loss of personal property. Of the amount petitioners received for loss of personal property, $11,642.94 was attributable to dry cleaning expenses, and the balance, $45,732.06, was attributable to the replacement costs of various items of personal property typically found in a family residence. After an investigation, Westfield paid petitioners the policy limits for their personal property losses because, according to the insurance company, "the ACV [actual cash value] of the UPP [unscheduled personal property] exceeded the limits and they were not made whole".

Westfield's decision to pay policy limits for personal property loss was based at least in part upon a document entitled "Personal Property Inventory" prepared by petitioners within days after the fire occurred (the inventory). The inventory consists of 38 pages that itemizes and describes hundreds of items of personal property destroyed by the fire. Some descriptions are specific, e.g., "Magnavox 19 inch color television with VCR", others are more general, e.g., "belts". For each item (or

category of items) listed on the inventory, petitioners made entries in designated columns for: (1) Number of items destroyed; (2) date and place of purchase; (3) "original cost"; and (4) replacement cost at or about the time of the fire.

For a few items, there is a variance between the entries made for original cost and the replacement cost. For most, if not all, of those few items, the replacement cost is higher than petitioners' estimated original cost for that item.

For most items, either the amounts entered for original cost and the replacement cost are identical, or, if more than one item was destroyed, the replacement cost listed is the product of the number of items multiplied by the amount listed as the original cost of the items. It appears that for these items, amounts entered in the "original cost" column do not, as the name suggests, represent petitioners' costs of the items, but instead duplicate petitioners' estimate of the replacement costs of those items.

From the information supplied by petitioners, Westfield computed the "actual cash value" of each item listed on the inventory by applying a depreciation factor, ranging from 20 percent to 70 percent, to the replacement cost of each item. The total of the amounts listed as original cost cannot be determined from the copy of the inventory placed into the record because relevant portions of the document are obscured by overlays.

Replacement costs for all of the items total $83,830.66; actual cash values (replacement cost minus depreciation) of all of the items total $51,711.17.

Some of the personal property located in the house at the time of the fire appeared to be salvageable. Petitioners hired MasterCraft and MasterClean to clean and/or refurbish these items. After removing these items from the Hendersonville residence, the cleaning company determined that some of them could not be cleaned or otherwise salvaged. The items that could not be cleaned were not returned to petitioners and were not included on the inventory. Petitioners estimated the value of these items to total $4,562.

Petitioners filed a timely joint 1995 Federal income tax return. It was prepared by a professional income tax return preparer. They reported adjusted gross income of $42,802. Taking into account itemized deductions totaling $29,516 and personal exemption deductions claimed for themselves and their four children, they reported no taxable income or Federal income tax liability on that return.

Relevant here, on the Schedule A, Itemized Deductions, included with their 1995 return, petitioners claimed a $21,610 casualty loss deduction, computed as follows:

| | |
|---|---|
| Cost or other basis of each property | $139,647 |
| Insurance or other reimbursement | 107,022 |
| Fair market value before casualty | 133,012 |
| Fair market value after casualty | - 0 - |
| Amount of loss | 133,012 |
| Amount of loss not reimbursed | 25,990 |
| Less $100 floor | 100 |
| Less 10 percent of adjusted gross income | 4,280 |
| Casualty loss claimed | 21,610 |

In the notice of deficiency, respondent disallowed, at least mathematically, $20,011.04 of the casualty loss deduction here in dispute. A fair reading of the explanation for this adjustment suggests that respondent intended to disallow the entire amount. Nevertheless, we proceed as though petitioners are entitled to a casualty loss deduction of at least $1,598.96 for 1995. In the notice of deficiency respondent also determined that petitioners are liable for a section 6662(a) penalty, but respondent now agrees that they are not.

Discussion

Subject to certain limitations, an individual is entitled to a deduction for "any loss[es] sustained during the taxable year and not compensated for by insurance or otherwise" that "arise from fire * * * or other casualty". Sec. 165(a), (c)(3), (h)(1) and (2).

To properly compute a casualty loss deduction, the following values of the damaged or destroyed property must be established: (1) Fair market value before the casualty; (2) fair market value after the casualty; and (3) the taxpayer's basis in the property.

See Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968). The reduction in the fair market value of the property caused by the casualty must be compared to the adjusted basis of the property. The lesser of the two amounts equals the amount of the casualty loss for purposes of computing the deduction allowed under section 165. See Helvering v. Owens, 305 U.S. 468 (1939); Pfalzgraf v. Commissioner, 67 T.C. 784 (1977); Cornelius v. Commissioner, 56 T.C. 976 (1971); Millsap v. Commissioner, supra; sec. 1.165-7(b)(1), Income Tax Regs. Subject to numerous exceptions, the general rule is that a taxpayer's basis in property equals the taxpayer's cost of the property. See secs. 1011 and 1012. Fair market value is defined in countless cases as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." United States v. Cartwright, 411 U.S. 546, 551 (1973); Gresham v. Commissioner, 79 T.C. 322, 326 (1982), affd. 752 F.2d 518 (10th Cir. 1985); sec. 1.170A-1(c)(2), Income Tax Regs.

Although less than clear from the manner in which the casualty loss deduction was computed on petitioners' return, the relevant "property" over which the controversy centers in this case is the personal property damaged or destroyed in the fire. Reciting the well-established general principles that control

situations such as the one presently before us is relatively simple and straightforward. Applying those principles to hundreds of personal household items that would typically be damaged or destroyed in a residential fire is more problematic, not only because of the number of items involved, but also because of the nature of those items.

Establishing the fair market values of used household items is not only difficult, but also not enough for purposes of section 165(a). The taxpayer's cost, or basis, in each item of property must also be established, often long after the item was acquired. Furthermore, the utility, economic, and sentimental values of a particular piece of personal property to a particular owner are not necessarily reflected in either the fair market value of, or the taxpayer's basis in, that item. Consequently, it is not unusual for a taxpayer who suffers the loss of property due to some casualty to sense a loss greater than that allowable as a deduction pursuant to section 165(a).

Petitioners could not explain the manner in which the casualty loss deduction is computed on their return, and we cannot find any support for the computation in the record. The amount of insurance reimbursement listed is obviously incorrect, at least in the aggregate, and does not correspond to the recovery of any of the component amounts. Furthermore, the amounts listed for "cost or basis" and "fair market value before

casualty" do not appear to be based upon information contained on the inventory.

At trial, petitioners more or less ignored the computation of the casualty loss deduction set forth in their return. Instead, they relied almost exclusively on the inventory, a document prepared not with reference to the amount of any potential casualty loss deduction to which they might be entitled, but rather in connection with an insurance claim under a policy that allowed recovery based upon replacement cost. For insurance purposes, the original cost of personal property damaged or destroyed in the fire was not particularly important. Consequently, the inventory does not provide sufficient information to allow for the proper computation of the amount of petitioners' casualty loss deduction. Nevertheless, respondent, in apparent recognition of the practical difficulties confronting petitioners in establishing the information technically required to support a casualty loss deduction, relies, at least in part, upon the information reported on the inventory, even though that document might not contain all of the information necessary to properly compute the allowable deduction. In an apparent attempt to simplify the matter, respondent now accepts petitioners' estimate of replacement costs and Westfield's estimate of actual cash value (replacement cost less depreciation) of the destroyed property as the measure of that property's fair market value

before the fire.[1]  Respondent argues that petitioners' casualty

loss deduction should be computed as follows:

| | |
|---|---:|
| Fair market value of personal property before fire | $51,711.17 |
| Less amount reimbursed | 45,732.06 |
| Less $100 (sec. 165(h)(1)) | 100.00 |
| Less 10 percent of adjusted gross income (sec. 165(h)(2)) | 4,280.00 |
| Allowable casualty loss deduction | 1,599.11 |

In effect, in the above computation, respondent considers the

property damaged or destroyed in the fire to have had no fair

market value after the fire.  Furthermore, to petitioners'

benefit, respondent treats the property's fair market value prior

to the fire and petitioner's basis in the property as equal,

which is highly unlikely.

We consider respondent's computation to be reasonable under

the circumstances, and note that, if only by coincidence, it

provides support for the adjustment made in the notice of

deficiency.  The computation, however, does not take into account

the value of those items removed from the Hendersonville

residence by the cleaning company, determined to be

unsalvageable, and never returned to petitioners.  We accept

petitioners' $4,562 estimate of value of those items, adopt

respondent's approach as to the significance of that estimate,

---

[1] Subtracting depreciation from replacement cost can be an acceptable method of determining the fair market value of an item of personal property.  See Cornelius v. Commissioner, 56 T.C. 976 (1971).

and find that petitioners are entitled to a casualty loss

deduction for 1995 computed as follows:

| | |
|---|---:|
| Fair market value of personal property listed on inventory, plus fair market value of personal property not listed on inventory, (values before fire) | $56,273.17 |
| Fair market value of personal property after fire | - 0 - |
| Less insurance reimbursement | 45,732.06 |
| Less $100 (sec. 165(h)(1)) | 100.00 |
| Less 10% of AGI (sec. 165(h)(2)) | 4,280.00 |
| Allowable casualty loss deduction | 6,161.11 |

Reviewed and adopted as the report of the Small Tax Case

Division.

Based on the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.