T.C. Summary Opinion 2002-23

UNITED STATES TAX COURT

ROBIN E. SCHMIDT, a.k.a. ROBIN E. TRIPALDI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7994-00S.                    Filed March 26, 2002.

Robin E. Schmidt, pro se.

Gary M. Slavett, for respondent.


GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.

In a notice of deficiency, respondent determined that petitioner is liable for a deficiency in Federal income tax for 1995 of $2,953.

After concessions made by petitioner,[1] the sole issue for decision is whether petitioner is entitled to a casualty loss for earthquake damage to her residence.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Encino, California.

Background

In 1994, petitioner owned and resided in a condominium located at 21901 Burbank Boulevard, #161, Woodland Hills, California (the condominium), with her two minor children and her companion, Richard Tripaldi (Mr. Tripaldi). Petitioner and Mr. Tripaldi were married in 1996. The condominium was a trilevel unit with three bedrooms, three bathrooms, and an attached garage. On January 17, 1994, an earthquake occurred in Northridge, California (Northridge earthquake). Immediately after the Northridge earthquake petitioner, her children, and Mr. Tripaldi moved out of the condominium and stayed at a hotel in

---

[1] Petitioner concedes respondent's disallowance of a charitable contribution deduction of $187 and miscellaneous itemized deductions of $1,195 claimed on her Schedule A, Itemized Deductions, for 1995.

Ventura County. After a few days at the hotel, they moved back to the condominium. When petitioner returned to the condominium, she found the place in disarray. Visible cracks in the walls allowed sunlight to shine into the interior of the condominium and the front door could not be closed. In May 1994, petitioner, her children, and Mr. Tripaldi moved into a single-family home in Woodland Hills (the home) about 1 mile away. After May 1994, petitioner did not make any payments on the mortgage obligation underlying the condominium. Petitioner received a letter from CenFen Bank (CenFen), dated August 18, 1995, informing her that her account "is seriously delinquent, and subject to immediate foreclosure." In a letter dated October 2, 1995, petitioner filed a "hardship request" to postpone the foreclosure proceeding on her condominium. On March 26, 1996, a Notice of Default and Election to Sell Under Deed of Trust was filed against the condominium, and foreclosure was completed on December 6, 1996.

After petitioner, her children, and Mr. Tripaldi moved to their new home, petitioner attempted to rent the condominium but was not able to find a tenant until November of 1994.

Before the Northridge earthquake, on June 30, 1993, petitioner quitclaimed 50-percent ownership of the condominium to Mr. Tripaldi. On August 29, 1994, Mr. Tripaldi quitclaimed his ownership interest in the condominium back to petitioner. According to testimony at trial, petitioner and Mr. Tripaldi

entered into an arrangement where Mr. Tripaldi lent approximately $30,000 to petitioner for the purchase of the home. The loan obligation was to be secured by petitioner's condominium. No loan documents were created to memorialize the loan. In other words, the parties' intent was to enter into a secured loan transaction by use of the 50-percent interest quitclaimed to Mr. Tripaldi. As exhibited by the quitclaim deed, dated August 29, 1994, Mr. Tripaldi testified that he relinquished his "security interest" in the condominium when petitioner purportedly satisfied her loan obligation.

Petitioner filed and was granted an automatic extension of time to file her 1995 Federal income tax return. Petitioner timely filed her 1995 Federal income tax return, in which she reported a casualty loss of $21,935.49 attributable to damage to the condominium from the 1994 Northridge earthquake. Petitioner attached to her 1995 return a four-page, single-spaced, itemized list of necessary repairs to the condominium (repair list). Petitioner based the repair list, categorized by the estimated cost for damage which occurred in each room, from an itemized list of repairs prepared by State Farm Insurance Co. (State Farm), dated June 20, 1996. Petitioner did not make the repairs or incur any repair expenses for items listed on the repair list during 1995 or any other year.

On her 1994 Federal income tax return, petitioner claimed a

casualty loss deduction of $51,029 for damage to her personal property and fixtures to the condominium.  Included in the claimed casualty loss were the following homeowners association fees:

| | |
|---|---|
| Homeowners Association Emergency Assessment (A Fund) Warner Village III | $8,600 |
| Homeowners Association Insurance Deductible (B Fund) Warner Village III | $4,000 |
| Homeowners Association Insurance 10% Exclusion (C Fund) Warner Village III | $2,179 |

Respondent allowed petitioner's casualty loss deduction for 1994, and the above casualty loss is not in dispute in this case.

In the notice of deficiency, respondent disallowed petitioner's casualty loss deduction for 1995 because petitioner failed to substantiate the amount of the purported casualty loss. In the alternative, respondent contends that if the Court were to decide that petitioner's loss was substantiated, then the loss was claimed in the incorrect year, and also that petitioner owned 50 percent of the Woodland Hills condominium, entitling her to only 50 percent of the claimed loss.

Discussion

Section 165(a) generally allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  Individuals may deduct losses to property caused by casualties such as earthquakes.  Sec. 165(c)(3).  The loss must exceed $100 and 10 percent of the

individual's adjusted gross income.  Sec. 165(h)(1) and (2)(A)(ii).

The regulations provide two methods of valuing a casualty loss; namely, the decrease in fair market value or the cost of repairs.  Sec. 1.165-7(a)(2), Income Tax Regs.  To be eligible for a casualty loss deduction based on the decrease in the fair market value, a taxpayer must prove (a) the fair market value of the property immediately before and immediately after the casualty, (b) the amount of insurance reimbursement, and (c) the adjusted basis in the property.  Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391, 395-396 (1978); Cornelius v. Commissioner, 56 T.C. 976, 979 (1971); sec. 1.165-7(a)(2), Income Tax Regs.[2]

---

[2]    Sec. 1.165-7(a)(2), Income Tax Regs., provides:

(2) Method of valuation.  (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal.  This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property.

(ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care

(continued...)

The cost of repairs may be considered if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for the repairs is not excessive, (c) the repairs are made only to the damaged portion of the property, and (d) the repairs do not cause the value of the property to exceed the value of the property immediately before the casualty. Lamphere v. Commissioner, supra at 395-396; Farber v. Commissioner, 57 T.C. 714, 719 (1972); sec. 1.165-7(a)(2)(ii), Income Tax Regs.

We note that in the instant case the claimed casualty loss is based upon the itemized repair list attached to petitioner's 1995 return. The parties stipulated that this repair list is identical to the State Farm estimated repair list, dated June 20, 1996. The parties further stipulated that none of the repairs were actually made, nor did petitioner expend any money for the repairs. Simply put, petitioner made no repairs to her condominium unit. According to Farber v. Commissioner, supra at 719, in order for a taxpayer to use the "cost of repair" method of valuation, the taxpayer must first show that "actual repairs and expenditures, not just estimates" were made. We stated in Farber that "in cases where this Court has permitted the 'cost of

---

[2](...continued)
for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.

repairs' method to be used to ascertain the amount of the loss, the repairs and expenditures were actually made * * *  The use of estimates has not been regarded as persuasive."  Id. at 719; cf. Clapp v. Commissioner, 36 T.C. 905, 908 (1961), affd. 321 F.2d 12 (9th Cir. 1963); Harmon v. Commissioner, 13 T.C. 373, 382-383 (1949).  Like the taxpayer in Farber, petitioner did not provide the actual costs she incurred in repairing the condominium during 1995 because no repairs were made.  Rather, the only evidence submitted is the estimated cost of repair list compiled by State Farm.  Accordingly, we find that petitioner failed to substantiate the claimed casualty loss deduction by the cost of repair method of valuation.

Petitioner may use the decrease in fair market valuation method to calculate the casualty loss; however, we have only sparse testimony from petitioner and Mr. Tripaldi as to the value of the condominium before or immediately after the Northridge earthquake.  Petitioner did not provide expert testimony, appraisal reports, or other documents to corroborate her basis for the fair market value.  See sec. 1.165-7(a)(2), Income Tax Regs.  It is well settled that we are not required to accept a taxpayer's self-serving testimony in the absence of corroborating evidence.  Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).

Finally, we note that petitioner does not argue that her out-of-pocket costs for actual repairs due to damage from the

Northridge earthquake were deducted as a casualty loss on her 1994 return, which respondent does not dispute. At the core of petitioner's case is her desire to recover some of the lost insurance reward which she was denied because the condominium was foreclosed.

On the basis of the above, we find that petitioner failed to substantiate the amount of the casualty loss, and, therefore, it is unnecessary for us to address respondent's alternative arguments. Accordingly, petitioner is not entitled to the casualty loss deduction during the year in issue. Respondent is sustained on this issue.

We have considered all arguments by the parties, and, to the extent not discussed above, conclude that they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.